## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FREDERICK JENSEN,**

      **Plaintiff,**

**v.**                                                   **No.  1:17-cv-00743-LF-KBM**

**DEPOSITORS INSURANCE COMPANY,**

      **Defendants.**

### PLAINTIFF'S MEMORANDUM MOTION FOR SUMMARY JUDGMENT

Plaintiff Frederick Jensen moves the Court to enter summary judgment in his favor in accordance with Fed.R.Civ.P. 56(a), finding that he is entitled to stacked UM/UIM benefits under his motor vehicle insurance policy issued by Defendant Depositors.   In compliance with D.N.M.LR-Civ. 7.1(a), Plaintiff states that he has inquired in good faith as to Defendant's position on this Motion and Defendant opposes the same. As grounds for this Motion, Plaintiff states that the material facts are undisputed, and demonstrate that Defendant cannot prevail on any of the claims in the Complaint.  In support of his Motion Plaintiff, Frederick Jensen, states as follows.

### INTRODUCTION

The core issues of this lawsuit arise from the sale of uninsured/underinsured motorist (UM/UIM) coverage to the Plaintiff, Frederick Jensen, by Defendant, Depositors Insurance Company, through a sales program using Wells Fargo bank employees as sales agents, and these agents' failure to follow New Mexico Law in efforts to obtain waivers of UM/UIM stacking or rejection of available UM/UIM coverage.  On or about May 7, 2014, Plaintiff went into Wells Fargo to do his banking.  The teller asked him if she could run a quote for him for auto insurance to determine if she could get him the same coverage for less money.  Mr. Jensen agreed.  When the teller came back with a lower quote, promising the same coverages, Mr. Jensen agreed to drop his coverage with Hartford and accept the coverage promised by Depositors as represented by the teller.  He filled out the application at the counter and signed where he was instructed to sign. Exh. 3.

After being severely injured in a motorcycle accident on September 3, 2016, with damages exceeding $300,000, Mr. Jensen learned for the first time that the Depositors policy claimed to provide him with only $100,000 per person non-stacked UM/UIM benefits instead of the stacked benefits of $250,000 per person UM/UIM coverage on three vehicles (stacked for a total amount of $750,000 per person) that he had possessed on his previous policy with Hartford. Depositors did not follow the law in its attempts to obtain a waiver of UM/UIM coverage and a rejection of stacking, and the Wells Fargo teller made material misrepresentations which require that the policy be reformed to provide for stacked UM/UIM coverage in the amount of $100,000 per person/$300,000 per occurrence on three vehicles (stacked limits of $300,000 per person/ $900,000 per occurrence). Because Defendant did not comply with the law in obtaining rejections of stacked UM/UIM coverage and/or rejections of available UM/UIM coverage, Plaintiff is entitled Summary Judgment mandating that policy be reformed to provide stacked UM/UIM coverage.

## UNDISPUTED MATERIAL FACTS

1. On or about May 7, 2014, Plaintiff obtained Depositors Policy No. PPXM0047234632 (the "Policy"), by filling out an application which provided $100,000.00 in liability insurance coverage for each of three motor vehicles owned by the Plaintiff. *See* **EXHIBIT 1.**

2. The Policy Application reflects the insured is purchasing three Uninsured/Underinsured (UM/UIM) coverages for bodily injury, one on each vehicle. **Id.**

3. Three cars are listed on the application with each car listed as having UM/UIM bodily injury coverages (UMBI). **Id**.

4. Three cars are listed on the application with three UM/UIM property damage coverages (UMPD), one on each car. **Id**.

5. The application reflects Mr. Jensen agreed to purchase a total of six UM/UIM coverages, three for bodily injury, three for property damage. **Id**.

6. The application requires the insured to sign a statement that the insured is only being charged a single premium for Uninsured Motorist coverage. **Id**.

7. The statement the insured is required to sign does not make any distinction between UM/UIM bodily injury coverage and UM/UIM property damages coverage.

8. The Application does not advise the insured that he/she is purchasing only a single UM/UIM insurance coverage. **Id**.

9. The Application does not give the insured any option to reject stacked coverage, it provides only one signature option. **Id**.

10. The only signature option available on the application requires the insured to verify something the agent and Depositors know to be untrue, that there is only one premium charged for UM/UIM coverage on the policy. **Id**.

11. The Application lists three vehicles with a total of six UM/UIM coverages (3 BI and 3 PD), and provides no information about how premiums will be charged for these six coverages. **Id**.

12. The Application does not allow an insured to make an individual selection to accept UM/UIM coverage on a per vehicle basis**. Id.**

13. The Application does not allow an insured to select or reject stacking of UM/UIM coverage in any manner. **Id**.

14. The Declarations Page issued with the policy does not advise the insured that he/she has been charged a single UM/UIM premium for a single coverage. *See* **EXHIBIT 2**.

15. The Declarations Page identifies at least four UM/UIM coverages on its face, one for bodily injury, and three for property damage. **Id**.

16. The Declarations Page identifies at least four UM/UIM premiums on its face, one for bodily injury, and three for property damage. **Id**.

17. The Declarations Page does not advise the insured that he/she has rejected any amount of

UM/UIM coverage. **Id.**

18. The Declarations Page does not advise the insured that he/she has rejected stacking of UM/UIM coverage. **Id.**

19. On the face of the Declarations Page the company has purportedly sold three UM/UIM property damage coverage, with separate premiums, for an amount of $100,000 per vehicle. **Id.**

20. The UM/UIM property damage coverage on the three vehicles can be stacked, separate premiums paid, for a total property damage coverage of $300,000. **Id.**

21. The three vehicles listed on the policy if added together do not equal a value of $50,0000. **Id**.

22. The company collected premiums for UM property damage coverage charging premiums for a non-existent risk for UM property damage limits it knew it would never have to pay. **Id**.

23. Depositors' agent, the teller at the bank, promised to provide a quote for the same coverages Mr. Jensen already had, at a lower premium, when she sold the policy. *See* **EXHIBIT 3**.

24. When Mr. Jensen signed the application, nothing advised him he was waiving or rejecting any amount of UM/UIM coverage. **Id.**

25. When Mr. Jensen signed the application, he simply signed where the teller advised him to sign in order to be provided the same coverages he already had at a lower premium. **Id.**

26. Mr. Jensen had stacked UM/UIM limits of $250,000 per person on three vehicles ($750,000 stacked total) afforded by a policy he had with Hartford at the time the teller advised him she could get him the same coverages for a lower premium by switching to Depositors. **Id.** *see also* **EXHIBIT 4.**

27. Mr. Jensen had stacked UMPD of $10,000 per vehicle, total of $30,000, under the Hartford

policy at the time the teller advised him she would get him the same coverages for a lower premium. **Id.**

## ARGUMENT

**I.     Summary Judgment Standard**

Summary judgment is proper when all the relevant pleadings, viewing the evidence in the light most favorable to the nonmoving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The party moving for summary judgment bears the initial burden, and once the movant meets these requirements the burden shifts to the party resisting the motion to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  "[A]t the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

Inferences are drawn in the light most favorable to the nonmoving party. *Alexander v. CareSource,* 576 F.3d 551, 557-58 (6th Cir.2009); *S. E. C. v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982). This Court may not weigh evidence or assess credibility. *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1035-36 (9th 2005); *Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 374 (6th Cir.2009).

**II.     The Plaintiff's automobile insurance policy with Depositors must be reformed to include stacked uninsured/underinsured motorist coverage with limits equal to the limits of liability coverage for the incident on September 3, 2016 because Depositors failed to obtain a valid rejection of stacking.**

**Depositors Violates *Montano***

Prior to 2004. the New Mexico Supreme Court faced constant and repeated litigation

challenging the effectiveness of UM/UIM coverage stacking waivers. The New Mexico Supreme Court had "never upheld an anti-stacking clause in UM policies because in each case we found either an ambiguity in the policy or the payment of multiple premiums." *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681 ¶1, 92 P.3d 1255.   In order to further the public policy of NMSA §§ 66-5-301(A) & (C), which are strongly in favor of stacking, the Court concluded a new course was necessary to remedy insurers' constant efforts to avoid stacking of UM/UIM coverages. *Id.* ¶¶ 1, 24.

The public policy underlying New Mexico's UM statute, Section 66-5-301, is to encourage consumers to purchase all the UM/UIM coverage that they can to protect New Mexico families against the tragic hazards of auto accidents with culpable uninsured motorists.   This policy "is consistent with the requirement that the insurer offer the maximum amount of UM/UIM coverage to the insured.  The requirement that UM/UIM coverage be offered by insurers is 'to encourage insureds to purchase such coverage.'" *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 12, 149 N.M. 157, 245 P.3d 1209 (quoting *Montano*, 2004-NMSC-020, ¶ 16). And the insured must be able to reject a portion of the maximum insurance to which the insured is entitled.  Reaffirming its prior analysis in *Montano*, the New Mexico Supreme Court in *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214. reiterated that reading Section 66-5-301 (A), (B) and (C) together plainly state the Legislature's intent to give each insured the right to reject UM coverage in its entirety, or a portion of the maximum coverage to which an insured is entitled. *Jordan,* ¶ 27.

Taking guidance from *United States Fidelity & Guaranty Co. v. Ferguson,* 698 So.2d 77 (Miss.1997), the Court in *Montano* interpreted NMSA 66-5-301 (A) and (C) as requiring insurers to offer UM/UIM coverage on each vehicle, with stacked UM/UIM coverage being the coverage to which the insured is entitled by default, unless the insurer undertakes the burden of obtaining a separate, comprehensible, and written disclaimer of stacking. *Montano,* ¶¶18, 19.  Because the UM/UIM coverage was required to be offered on each vehicle, and the insured would be entitled to

stacking by default absent a comprehensible, written rejection of stacking the Court provided insurers with explicit instructions on how insurers must offer UM/UIM coverage on each vehicle and the means by which an insured could reject such coverage on any one vehicle insured under the policy.

The Court held that in order to limit stacking based on an anti-stacking provision, an insurer must obtain a "written rejection of each stacked coverage," and in so doing "shall declare the premium charge for each" UM/UIM coverage available and allow the insured to reject, in writing, some or all of the offered coverages. *Id.* ¶¶ 19-20. To make its ruling clearer, the Court provided the following illustration for insurance companies to follow when seeking to obtain rejections of stacking:

> As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages. In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury. Thus, the insured's expectations will be clear, and an insured will only receive what he or she has paid for.

*Id.,* ¶20.

Following the process explicitly set forth by the Court in *Montano* allows an insured to clearly understand the coverage that is available, and allows the insured to make a decision as to how much UM/UIM coverage the insured needs and can afford. Requiring the per vehicle selection furthers the public policy of encouraging the purchase of UM/UIM coverage because the insured who cannot afford UM/UIM coverage on each vehicle is not priced out by being required to buy such coverage on an all or nothing basis. The insured can knowingly choose less. *Id.,* ¶16.

Here Depositors did not provide Mr. Jensen any opportunity to make UM/UIM coverage

selections as required by law.  As Mr. Jensen attests, he was approached by a teller at Wells Fargo who said she could get him the same insurance coverages he had with Hartford Insurance, but could get them at a lower price.  *See* Exh. 3.  He provided a copy of his Hartford policy to the teller to enable her to match the coverages.  The Hartford policy provided Mr. Jensen with stacked UM/UIM coverage.  *See* Exhs. 3, 4, UMF #26.

The application provided to Mr. Jensen listed his three vehicles, and listed UM/UIM BI coverage on each, and UM/UIM PD coverage on each. *See* Exh. 1 and UMF #s 1-13.  Mr. Jensen was not afforded opportunity to reject coverage on a per vehicle basis.  *Id.*  Instead he was simply instructed to sign at the bottom of the application, and he complied with the instruction.  *See* Exh. 3. Under *Montano* Depositors was required to offer UM/UIM BI and PD coverage on each vehicle. It was required to list the premium cost for UM/UIM coverage for each vehicle.  And it was required to allow him to select or reject such coverage on a per vehicle basis. *Montano,* ¶¶ 19 and 20, and recognized by *Bird v State Farm Mut. Aut. Ins.,* 2007-NMCA-088, ¶8.

The Application, Exhibit 1, makes clear that Mr. Jensen was provided an application form providing three bodily injury UM/UIM coverages, and three property damage UM/UIM coverages, with no opportunity to reject them on a per vehicle basis, and with no disclosure of the premium cost. *See* Exh. 1.  No UM/UIM premiums are reflected on the Application. *Id*. No menu of coverages demonstrating coverage limit options and pricing options was provided to allow Mr. Jensen to consider other coverage levels or other pricing options.  *Id*.  His only option was to sign and accept the six UM/UIM coverages as offered. *Id*.  It is very telling that Depositors, in its Motion for Summary Judgment, attached only one page of the five-page application form.  It knows the application does not comply with New Mexico law. *Montano's* holding is clear.  "In a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages." *Id.,* ¶20.

The per vehicle selection/rejection of stacked UM/UIM coverage required by *Montano* must be considered in light of New Mexico's long history of furthering the legislative intent behind the Uninsured Motorist statute. As noted in *Jordan v. Allstate*, 2010-NMSC-051, 245 P.3d 1214,

¶15 The New Mexico Supreme Court's

> primary goal when interpreting statutes is to further legislative intent. *Jolley v. Associated Elec. & Gas Ins. Servs. Ltd.,* 2010–NMSC–029, ¶ 8, 148 N.M. 436, 237 P.3d 738. When construing the legislative intent behind our UM/UIM statute, this Court has long applied a "**qualitatively different analysis**" than we use when construing many other types of statutes and insurance policies. *Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 558, 787 P.2d 835, 838 (1990). In a consistent line of cases, this Court has liberally interpreted Section 66–5–301 and its implementing regulation, now codified as 13.12.3.9 NMAC, for their remedial purposes. *See Phoenix Indem. Ins. Co. v. Pulis,* 2000–NMSC–023, ¶ 7, 129 N.M. 395, 9 P.3d 639; *Romero v. Dairyland Ins. Co. (Romero v. Dairyland),* 111 N.M. 154, 155–56, 803 P.2d 243, 244–45 (1990). The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be "construed strictly to protect the insured." *Romero v. Dairyland,* 111 N.M. at 156, 803 P.2d at 245; *see also Weed Warrior,* 2010–NMSC–050, ¶ 14, 149 N.M. 157, 245 P.3d 1209 (explaining that our statutory scheme requires that insurers offer the maximum amount of UM/UIM coverage possible).

Depositors application for coverage does not comply with the rules for offering and rejecting stacked coverage on a per vehicle basis as required by the New Mexico Supreme Court in *Montano*, interpreting NMSA 66-5-301 (A) and (C), and its failure requires reformation of the policy to provide the maximum amount of stacked coverage as the default. *Montano,* ¶19-20 *and Jordan,* ¶22.

While *Montano* set forth a standard that would be required for all cases going forward, the application of the standard was purely prospective. *Montano,* ¶¶ 1, 22. To decide *Montano,* the Supreme Court looked to prior standard to determine whether or not Allstate had complied with policy construction under an ambiguity analysis. *Id.* The ambiguity analysis, no longer the standard for review, required an insurer attempting to deny stacking to clearly and unambiguously advise an insured of two things, that: 1) only one premium had been charged; 2) and, only one UM/UIM coverage was available. *Id.,* ¶¶ 9, 14-16, 27. Depositors' attempt to deny stacked UM/UIM

9

coverage fails under the old analysis (no longer the appropriate analysis under *Montano*) because it fails to plainly state in the Application that only one coverage is being purchased.  Exh. 1, UMF 1-13.  It fails a second time in that Depositors actually charges multiple UM/UIM premiums despite the misrepresentation on the application that it is only charging a single UM/UIM premium. *Exh.* 2, UMF 14-22.

As demonstrated, the application reflects six UM/UIM coverages available (three UMBI and three UMPD).  *See* Exh. 1.  And while the Application issues a declaration that only one premium is being charged for UM/UIM coverage (with no distinction between BI and PD), Depositors own declarations page demonstrates this statement to be false. Exhs. 1 and 2. Depositors Declarations page sets forth one UMBI coverage and three UMPD coverages with at least four premium charges for these UM/UIM coverages.  *See* Exh. A to DMFSJ..  Even under the previous standard, ambiguity analysis, Depositors claimed stacking rejection fails because the application and declarations page show multiple UM/UIM coverages available, and the Declarations pages show multiple UM/UIM premiums charged. Exhs. 1 and 2, and Exh. A to DMFSJ.

In *Montano* the Court also consider actuarial ruses used by Allstate in its premium structure.  *Montano, ¶ 23.*  It noted that New Mexico's long history of jurisprudence required stacking of UM/UIM coverage where multiple premiums are paid because it is only fair to give the insured what was paid for and it would give effect to the reasonable expectations of the insured. *Id*. In *Montano* there was evidence to indicate Allstate was advising its insureds that a single premium was being charged for a single coverage, but was actually charging more premiums for multiple vehicle policies. *Id., ¶* 27.  The Court read *Rodriguez v. Windsor Insurance Co.,1994-NMSC-075 118 N.M. 127, 879 P.2d 759,* to require the insurer to provide a short simple statement that the amount charged represents a single premium for a single coverage (and that the insurer actually be charging a single premium for a single coverage). *Id*.

Depositors' application requires the insured to sign the statement that there is only one UM/UIM premium charged but fails to advise that the charge is only for one coverage. *See* Exh.1 and UMF 6-8. The Application and the Declarations page reflect multiple UM/UIM premiums and multiple UM/UIM coverages. *See* Exhs. 1 and 2 and UMF 1-22. The actuarial ruse occurring here is that Depositors seeks to avoid stacked UM/UIM bodily injury coverage, which may create a high exposure when an insured like Mr. Jensen sustains severe injuries as a result of the negligence of an uninsured motorist.   At the same time Depositors has charged Mr. Jensen three UMPD coverages for $100,000 each, stacked coverage of $300,000.  *See* Exhs. 1 and 2. The Court can take judicial notice that the three vehicles listed on the Application and Declarations page, Exhs. 1 and 2, are not in total valued at more than $50,000.  Depositors actuarial ruse is to bill for multiple coverages that will not be used while seeking to claim only one UM coverage was sold.  Nothing in the Application nor the Declarations indicates only one UM/UIM coverage was sold. *See* Exhs. 1 and 2, and UMF 1-22.  The Application, which shows multiple UM/UIM coverages being purchased, falsely advises only one premium has been charged, but at least four UM/UIM premiums are reflected in the Declarations page. *Id.*

The New Mexico Supreme Court noted Insurance policy clauses that prohibit stacking are particularly **repugnant** to public policy when the injured insured has paid separate **premiums** for underinsured/uninsured motorist coverage on each vehicle. *Jimenez v. Foundation Reserve*, 1988 - NMSC- 052, 757 P.2d 792, ¶10. Citing to Lopez v. Foundation Reserve Insurance Co., Inc., 1982- NMSC-34, 98 N.M. 166, 646 P.2d 1230, holding that if an insurance company charges **separate premiums** for each vehicle covered under uninsured/underinsured motorist protection, even if the second premium is a reduced premium, fairness requires that the insured be allowed to stack the coverages for which he or she has paid. *Jimenez* at ¶10.

The New Mexico Supreme Court instructs that stacked UM/UIM coverage must be provided if there is ambiguity in the policy or where multiple premiums are paid for UM/UIM

coverage. *Montano*, ¶ 9. If the insurance policy does not plainly notify the insured that **one premium** has been paid for **one UM/UIM insurance coverage**, the coverage must be stacked under the policy. *Id.* ¶ 14-16, 27. Under *Montano*, *Rodriguez,* and *Jimenez* Depositors' actuarial scheme fails, and it has not obtained a valid rejection of UM/UIM stacking.

**III.    Depositors failed to obtain a valid rejection of UM/UIM coverage, and failed to make such a form a part of the policy through attachment, endorsement, or by some other means mandating that the policy be reformed to provide the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage.**

**Depositors Violates *Jordan***

In seeking to deny stacking to Mr. Jensen, Depositors is claiming that he rejected the UM/UIM benefits on two of his three vehicles (although premiums were charged on all three vehicles). With bodily injury limits of $100,000 per person and $300,000 per occurrence on each vehicle, Depositors claims Mr. Jensen rejected UMBI coverage of $200,000 per person and $600,000 per occurrence in UM/UIM bodily injury coverage. However, nothing in the Application nor the Declarations pages advised Mr. Jensen that he had rejected any UM/UIM coverage. *See* Exhs. 1 and 2. Over the course of decades insurers continue to seek various strategies to avoid offering of UM/UIM coverage as required by NMSA 1978, Section 66-5-301 and 13.12.3.9 NMAC. The New Mexico Supreme Court has long held that a rejection of UM/UIM coverage equal to the liability limits can **only** be effective if it is in writing and if it is meaningfully incorporated into the policy delivered to the insured. *See Jordan.*

In *Jordan*, the New Mexico Supreme Court, consistent with its opinion in *Marckstadt* v. *Lockheed Martin Corp.*, 2010-NMSC-001, 147 N.M. 678,228 P.3d 462, and relying upon NMSA 1978, Section 66-5-301 and 13.12.3.9 NMAC, held that an insurer must obtain a written rejection of UM/UIM coverage from the insured in order to exclude it from the automobile liability insurance policy, and that evidence of the written rejection must be made a part of the policy by endorsement, attachment, or by some other means that calls the insureds' attention to the fact that such coverage has been waived. *See Jordan*, ¶ 18; *Marckstadt*, ¶ 16. In order "to effectuate the

policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently* act to reject it before it can be excluded from a policy." *Marckstadt*, ¶ 16 (citing *Romero*, 111 NM 156, 803 P2.d 245). In *Jordan*, the New Mexico Supreme Court stated that "[d]espite this Court's repeated pronouncements that an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy, these consolidated cases indicate that insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice." *Jordan*, ¶ 20 (internal citation omitted).

The *Jordan* Court held that in order for an insured to obtain a valid waiver of UM/UIM coverage the insured must be offered UM/UIM coverage limits equal to the limits of their liability coverage. *Jordan*, ¶ 2. The insured must be provided with information regarding all levels of UM/UIM coverage available to the insured, including the step-down levels, and be provided with a menu of the premium pricing options for each related level of coverage. *Id.,* ¶ 21. In recognizing this requirement the Court stated, "providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and can afford and will minimize uncertainty in litigation with regard to the coverage that the insured has obtained." *Id.*

In extending a meaningful offer to the insured, an insurer is required to provide the insured "'affirmative evidence of the extent of coverage' to enable him or her to make informed choices about coverage." *Marckstadt*, ¶ 19 (quoting *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990)). "The written rejection requirement furthers the policy of expanding UM/UIM coverage by assuring that the insured is sufficiently informed before rejecting coverage, alerting the insured to the importance of the decision and providing clear evidence of a decision to reject, reducing litigation after the fact. *Id.,* ¶ 21.

The policy considerations underlying Section 66-5-301 and 13.12.3.9 NMAC require a

writing that provides affirmative evidence of the extent of coverages available to the insured so that the insured can make an informed choice about the desired level of coverage. *Marckstadt*, ¶ 19. And the New Mexico Supreme Court has mandated that a meaningful offer of coverage requires providing information about the availability of stacking, an insured's ability to waive stacking, and corresponding premium costs associated with the same. *Montano*, ¶ 20. The New Mexico Supreme Court has mandated that the affirmative evidence of the extent of coverage, and the writing providing the insured information about the extent of coverage, must contain the varying levels of UM/UIM coverage available and the corresponding premium costs for each. *Montano*, ¶ 20; *Jordan*, ¶ 24.

*Jordan* sets out the consequences stemming from an insurer's failure to abide by the requirements:

> If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

*Jordan,* 2010-NMSC-051, ¶ 22.

A. <u>No Menu or Selection Form Provided</u>

Here Depositors' Application is wholly devoid of any coverage options. The only options listed are limits of insurance at a fixed level, $100,000/$300,000 for liability and UM/UIM BI coverages, and $100,000 for UMPD coverages on three vehicles. There is no evidence that any menu of lower UM/UIM limits or different pricing options was ever offered to Mr. Jensen. The only evidence is that they were not. *See* Exhs. 1, and 3 and UMF 1-13. The only testimony on record is the Affidavit of Mr. Jensen in which he plainly affirms no menu of coverages or prices was ever presented to him. *See* Exh. 3. Depositors violates the second requirement of Jordan which mandates reformation of the policy to provide the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage. *Jordan,* ¶ 22.

14

B.  Depositors Failed To Obtain A Written Rejection Of UM/UIM Coverage

The third requirement for an insurer to obtain a valid rejection of UM/UIM coverage, as set forth in *Jordan,* is that the insurer obtain a written rejection of the coverages offered. *Id.*  This requirement significantly dovetails with the second requirement in that it is a written confirmation that the insured has been offered the menu of coverages available, has had a chance to review and consider the options available for purchase, and has chosen an option for such coverage or rejected the same. *Id., ¶* 24.  *See also Markstadt, ¶* 19.  Here depositors did not obtain any rejection of UM/UIM coverage from Mr. Jensen. The only document provided to Mr. Jensen was an application which demonstrated that he was purchasing six UM/UIM coverages (three UMBI and three UMPD), and falsely advised him he would be charged only a single premium for these coverages. *See* Exhs.  1 and 3, and UMF 1-13.  He could not sign to reject any available coverages because he was not given an option of coverages and premiums from which to select, and was given no option to reject any available coverage. *Id.* Depositors violates the third requirement of *Jordan* which mandates reformation of the policy to provide the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage. *Jordan, ¶* 22.

C.  Rejection of UM/UIM Coverage Not Made a Part of The Policy

For a waiver or rejection to be valid, the New Mexico Administrative Code requires that it "must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC.  In *Marckstadt*, the New Mexico Supreme Court determined that the New Mexico Administrative Code ("NMAC") does not require that the insured's actual written rejection be physically attached to the policy.  *Marckstadt, ¶* 26.  However, for a waiver to be valid, there must be some attachment to the policy that contains the same or substantially the same information that is contained on the original rejection/selection form. *See id., ¶¶* 25-26; *Farmers Ins. Co. of Arizona v. Chen*, 2010-NMCA-031, *¶¶* 24-25, 148 N.M. 151, 231 P.3d 607.  This requirement has been referred to, separately and distinctly from the "written

rejection requirement," as the "attached notification requirement." *See Chen*, ¶¶ 23-27. The attached notification requirement can be satisfied by either endorsement, attachment, stamping, or otherwise making the rejection a meaningful part of the policy issued.

The NMAC allows for attachments of the waiver/rejection form first by endorsement. An endorsement is a separate writing, included in an insurance policy that specifically alters, amends, or deletes coverage from the policy. 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 18:19, at 18-42 (3d ed. 2005). Typically, an insurer includes a list of endorsements included in a policy, identifying each by a specific code or number, on the insured's declarations page. As such, an endorsement code on a declarations page is merely a reference to, or table of contents of, endorsements that one should expect to find within the policy itself. "[I]n order to be a part of the policy, an endorsement must be properly attached to the policy so as to indicate that it and the policy are parts of the same contract and must be construed together." 2 *Couch on Insurance*, *supra*, § 21.21, at 21-98.

In this case, Depositors has wholly failed to attach any endorsement to the policy, or any information on the declarations page alerting the insured that UM/UIM coverage was in any manner or any amount rejected. *See* Exh. 2, and Exh A to DMFSJ. There is no hint in the declarations page of any the purported rejection of $200,000/$300,000 of UM/UIM benefits nor any suggestion of the purported waiver of stacking. *See* Exh. A to DMFSJ. Additionally the declarations page attached to Depositors' Motion demonstrates that no endorsement deleting or altering UM/UIM coverage was included in the Mr. Jensen's policy. *Id.* Depositors cannot credibly claim that the Mr. Jensen's "rejection of stacking" was "endorsed" in such a way that satisfies the attached notification requirement because no endorsement deleting or altering the Mr. Jensen's UM/UIM coverage was attached to his policy. There is no indication of rejection of UM/UIM coverage and no reference to an endorsement rejecting stacking. *Id.*

In order to protect the average insured from the perils of indecipherable insurance jargon

and policies as dense as any jungle, the provisions of the Administrative Code requires that the attachment to the policy contain the same information as contained in the original rejection/waiver form. *See Rodriguez*, 118 N.M. at 132-33, 879 P.2d at 764-65 (rejecting industry jargon of "incl" on a declarations page as being sufficient to inform insured that no stacking of UM/UIM coverage was afforded in the policy). The goal in requiring that the information be contained within the policy fulfills the stated purpose of insuring that the insured may reconsider his or her decision regarding UM/UIM coverage, and that the insured remains well informed as to that decision. Thus, simple notations on a declarations page, without a corresponding endorsement, do not satisfy the "endorsed" requirement contained in the Administrative Code. Depositors did not even bother with a simple notation. The declarations page is devoid of any reference to rejection of UM/UIM coverage or rejection of stacking.

A second method for satisfying the NMAC provision is to attach the insured's actual written rejection to the policy (*i.e.,* the insured's writing). *See Marckstadt*, ¶ 26. Attaching the insured's actual written rejection enables the insured to remain well informed as to that decision. *Id.* As noted by the New Mexico Supreme Court, however, while attachment of the actual rejection is not mandated by 13.12.3.9 NMAC, the information contained therein must be made part of the policy. *See id.*; *Romero*, 111 N.M. at 156, 803 P.2d at 245.

Requiring the waiver/rejection form to include the information described above and a writing by the insured evidencing the affirmative selection by the insured, coupled with the second requirement that the same information be contained in the policy issued, may be referred to as a "belt and suspenders" approach, as noted by Justice Bosson in his dissent in *Marckstadt. See Marckstadt*, ¶ 45 (Bosson, J., dissenting). As noted by Justice Bosson, "[m]ost of our UM jurisprudence interpreting this statute and the insurance regulation derives from people like Josie Romero who truly need the 'belt and suspenders' approach. Implicit in our opinions is the plight of the individual insured trying to come to terms with indecipherable insurance jargon and policies as

dense as any jungle." *Id.* Depositors did not, and can not, claim that it attached Mr. Jensen's application to the policy. Even if it had, the attachment would be inadequate because the application did not comply with the first requirement of *Jordan*, the premium and coverage options menu first required in *Montano*. *See* Exh.1 and UMF 1-13. "Finally, an insurer may stamp the rejection or make it part of the policy by some other means." *Id.*

The purpose of 13.12.3.9 NMAC has been extensively considered by the New Mexico Supreme Court. In *Romero*, the Court stated:

> The regulation that the rejection be made a part of the policy delivered to the insured quite apparently is to ensure that the insured has affirmative evidence of the extent of coverage. Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage. Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of coverage be knowingly and intelligently made. **Any individual rejecting such coverage should remain well informed as to that decision**.

*Romero*, 111 N.M. at 156, 803 P.2d at 245-46 (emphasis added). The New Mexico Administrative Code provision requiring attachment of a rejection, in some form, to the policy is directly tied to the requirement that the offer be such that the insured can knowingly and intelligently act to reject it, and that the insured is provided affirmative evidence of the **<u>extent</u>** of coverage to enable him or her to make informed choices about coverage, and to **reconsider** that decision at a later date. *Marckstadt*, ¶ 19.

If the original waiver/rejection form must contain an explanation of uninsured motorist coverage, a description of available coverages along with the premium cost, and an explanation that the insured is able to wholly reject such coverage, then this is the same information that necessarily must be contained in the attachment to the policy, regardless of the form that attachment may take.

In order to be able to reconsider their choices regarding UM/UIM coverage, the insured must be able to reconsider the purpose of, and protection afforded by, UM/UIM coverage. The insured must be able to reconsider the varying levels of coverage available, including stacked

coverages, and the corresponding cost associated with each. The insured must be able to reconsider the fact that he or she is entitled to waive the coverage in its entirety.  Only by having this information, affirmative evidence of the extent of coverage, contained within the policy can the insured reconsider his or her original decision regarding UM/UIM coverage in a knowing and intelligent manner.

As noted Depositors failed to make the purported rejection a part of the policy in any fashion.  Depositors cannot argue that the Application was made part of the policy by reference.  A similar argument was squarely rejected by the New Mexico court of appeals in *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 1.  In *Arias*, the insurer argued that a statutory provision making an insurance application part of the policy should be construed to mean a rejection of UM/UIM coverage in the application was tantamount to attachment to the policy.  *Id.*, ¶ 14.  The Court of Appeals rejected this argument and concluded that absent actual attachment of the rejection to the policy, and delivery to the insured, the waiver had not been validly made part of the policy.  *Id.*, ¶ 16.

In *Jordan*, the New Mexico Supreme Court re-affirmed that an attempt to define the policy as including a rejection of UM/UIM coverage that was not physically included in the policy delivered to the insured was invalid.  Specifically, with regard to *Lucero v. Trujillo*, one of the three consolidated cases in *Jordan v. Allstate*, Progressive provided its insured with a computerized selection of available UM/UIM coverages, along with corresponding costs, on a computerized application.  *Jordan*, ¶ 10.  Progressive considered the computer application part of the policy.  *Id.*, ¶¶ 34-35.  When issuing the policy to the insured, however, Progressive failed to attach an endorsement, the selection/rejection form, or the application to the policy copy sent to Ms. Lucero.  *Id.*, ¶ 35.

While the Supreme Court commended Progressive's offering of UM/UIM coverage, it found the purported waiver/selection invalid due to Progressive's failure to physically attach the

waiver/rejection, an endorsement, or similar document to the policy issued to Ms. Lucero.  *Id.*  Her policy declaration, indicating that she had rejected UM/UIM coverage in limits equal to her liability coverage, was deemed invalid and failed to satisfy the "attached notification requirement." *Id.*; *see also Chen*, ¶¶ 23-27 (explaining meaning of "attached notification requirement").

Depositors' failure here is the same as Progressive's failure in *Jordan*.  Even if Depositors had originally had Mr. Jensen execute an adequate option/selection/rejection form (which it did not), it would be invalid due to its failure to attach it to the policy of insurance delivered to the Mr. Jensen, and its failure to include an endorsement in the policy.  Attachment or endorsement is an absolute requirement under *Jordan* and was recognized as such prior to *Jordan* by the New Mexico Supreme Court in *Kaiser v. DeCarrera* 1996-NMSC-050.  *Kaiser* held that an insured's intentions to reject UM/UIM coverage were irrelevant if the insurer did not comply with NMAC requiring attachment of the rejection to the policy.  *Id.,* ¶¶ 6-9, 17. Depositors failed to make the rejection a part of the policy in a manner consistent with the Superintendent of Insurance's regulation to include attachment of the rejection/waiver form, an endorsement, or specific policy provision that provides the same or substantially the same information as the rejection/waiver form. Depositors violates the fourth requirement of Jordan which mandates reformation of the policy to provide the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage. *Jordan,* ¶ 22.

**IV.    Depositors is also required to reform the policy in accordance with the promises made by its agent.**

Although sufficient evidence exists to determine that Mr. Jensen's policy must be reformed as a matter of law, Mr. Jensen's policy must also be reformed based upon ambiguity created by representations of the agent at the time of sale of the policy.  As set forth in Mr. Jensen's affidavit, he was promised by Depositors' agent, the teller at the bank, that he would be provided the same coverage he already had, but at a lower premium.  *See* Exh. 3.  He was provided an application that showed six UM/UIM coverages (three UMBI and three UMPD).  *Id.*; *see* Exh. 1. Mr. Jensen signed where instructed after he was told that by signing he would be getting the coverage

promised.  *See* Exh. 3.  There is no other evidence as to the teller's representations other than the affidavit by Mr. Jensen because Depositors has failed to identify the teller who sold the policy to Mr. Jensen.

In interpreting the insurance contract, the Court may consider extrinsic evidence to determine the parties' intentions.  *Ponder v. State Farm*, 2000-NMSC-033, ¶¶ 14-19.  In *Ponder,* State Farm attempted to exclude a driver from stacked uninsured motorist coverage after the young woman married and moved out of her parents home.  State Farm denied her stacked benefits on the basis that she was no longer a resident relative under the policy. *Id.*  Her mother testified that she had repeatedly sought and received assurances from her agent that her daughter's coverage status would not change after she moved from the home, and the agent continued to rate the daughter as an insured. *Id.*  Based on these representations the Court determined the policy was ambiguous and stacking was required.

Here, coverage would necessarily be reformed in accordance with the teller's representations.  There is no evidence of the teller's representations other than the Application filled out by Mr. Jensen and his testimony contained in his affidavit.  *See* Exhs. 1 and 3, and UMF 1-13 and 23-26.  The teller's representations mandate reformation of the policy to provide the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage. *Jordan*, ¶ 22, and *Ponder*, ¶¶ 14-19.

## VI.     Reformation of the policy is strictly mandated based on Depositors' failure to obtain proper rejections of stacking and UM/UIM coverage.

Depositors makes an argument not supported by law that Mr. Jensen cannot claim excusable ignorance of the meaning of its policy's "disclaimer of stacking" because he added UM/UIM coverage to his motorcycle policy issued by another insurer, Markel. DMFSJ, p. 9.  Defendants ignore that a "disclaimer of stacking" is insufficient under New Mexico law to effectuate a rejection of stacking unless it is done as set forth in the illustration of *Montano*.  *See* discussion regarding *Montano* above.

Defendants also disregard that the "disclaimer of stacking" is also a rejection of UM/UIM coverage, strictly governed by the requirements of *Jordan* as set forth above. The requirements of these cases, which recognize and incorporate requirements under the NMAC, are strict requirements.  If an insurer fails to obtain a stacking rejection as mandated by *Montano*,  stacked UM/UIM coverage will be read into the policy.  *Montano,* ¶¶ 19-21.  If an insurance company attempts to obtain a rejection of any amount of available UM/UIM coverage, it must comply with each and every one of the requirements set forth in *Jordan* as set forth above.

> Insurers have statutory obligations to offer UM/UIM coverage up to the liability limits of the policy, *see Weed Warrior,* 2010–NMSC–050, ¶ 14, 149 N.M. 157, 245 P.3d 1209, and to obtain a valid rejection before excluding UM/UIM coverage from the policy, *see Marckstadt,* 2010–NMSC–001, ¶ 16, 147 N.M. 678, 228 P.3d 462. If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits. These requirements are consistent with those we articulated in *Marckstadt,* 2010–NMSC–001, ¶ 18, 147 N.M. 678, 228 P.3d 462 ("Unless the rejection requirements of 13.12.3.9 NMAC are strictly met, UM/UIM coverage will be read into an automobile liability policy.").

*Jordan,* ¶ 22.  The provision of the maximum possible amount of uninsured/underinsured motorist (UM/UIM) coverage in every insurance policy is the default rule, and any exception to that rule must be construed strictly to protect the insured. *Id.,* ¶ 15.

As set forth above, Depositors has wholly failed to comply with the requirements for rejection of stacking or rejection of UM/UIM coverage required by law.  And the only documentation received by Mr. Jensen after the purchase was a declarations page which never advised him he had rejected stacking and did not advise him he had rejected any amount of UM/UIM coverage.

Finally, even if Mr. Jensen had intended to reject some level of UM/UIM coverage (which he did not), Depositors is strictly liable for the coverage, and the policy will be reformed, if it fails to obtain rejections in accordance with New Mexico law.  *See Kaiser v. DeCarrera* 1996-NMSC-050, ¶¶ 6-9, 17.

**VI.    Conclusion.**

Based upon the foregoing, Plaintiff clearly demonstrates he is entitled to reformation of the policy to provide the maximum amount of stacked UM/UIM bodily injury coverage in an amount of $100,000 per person and $300,000 per occurrence on each of his three vehicles for total stacked limits of $300,000 per person/ $900,000 per occurrence.

**Respectfully Submitted.**
**LAW OFFICES OF GEOFFREY R. ROMERO**
**/s/** *Geoffrey R. Romero*
**Geoffrey R. Romero, Esq.**
**4801 All Saints Road NW**
**Albuquerque, NM 87120**
**(505) 247-3338**

**and**

**LAW OFFICES OF DAVID M. HOULISTON**
**David M. Houliston**
**7500 Jefferson Street NE, Suite 106**
**Albuquerque, NM 87109**
**(505) 247-1223**
**(505) 214-5204 Facsimile**