IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FREDERICK JENSEN,

     Plaintiff,

v.                                1:17-cv-00743-LF-KBM

DEPOSITORS INSURANCE COMPANY,

     Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on defendant Depositors Insurance Company's ("Depositors") Motion for Summary Judgment against plaintiff Frederick Jensen (Doc. 54), and Depositors' related Motion to Strike (Doc. 59). Also before the Court is plaintiff Frederick Jensen's Memorandum Motion for Summary Judgment (Doc. 57). All the motions are opposed. *See* Docs. 56, 63, 65. For the following reasons, the Court GRANTS Depositors' Motion for Summary Judgment and DENIES Mr. Jensen's Motion for Summary Judgment, and GRANTS in part Depositors' Motion to Strike.

## I.    <u>Statement of Facts</u>[1]

On May 7, 2014, plaintiff Frederick Jensen signed and submitted a "Personal Auto Policy Application New Mexico," (hereafter "Application") to Depositors Insurance Company through Wells Fargo Insurance, Inc. Doc. 56-1 at 1−4; Doc. 60-1 at 1. The Application sought coverage for three vehicles, each with $100,000/$300,000 bodily injury coverage for each person/accident, and $100,000 in property damage coverage for each accident. Doc. 56-1 at 1. The Application also sought "Uninsured Motorist Split Limits (*) Per Policy (Policy level coverage)" of

---

[1] This statement of facts mostly contains undisputed facts, but there are points at which the evidence is conflicting, which I have attempted highlight as necessary.

$100,000/$300,000 bodily injury coverage for each person/accident for each vehicle, and

$100,000 in "Uninsured Motorist Property Damage" for each vehicle.  *Id.*

On the fourth page of the Application was a statement that read:

---

**NON-STACKING OF UNINSURED MOTORISTS COVERAGE ACKNOWLEDGEMENT**

This acknowledgement only applies to those who have purchased Uninsured Motorists Coverage.

By signing below I understand and acknowledge that I am being charged a single premium for Uninsured Motorists Coverage.  As a result, regardless of the number of vehicles listed on this policy, stacking of Uninsured Motorists Coverage is not available.

---

Doc. 56-1 at 4.  Mr. Jensen signed directly below this statement, and dated it May 7, 2014.  *Id.*

At the very end of the Application, Mr. Jensen signed a statement that said:

---

I (we) declare that I (we) have read the questions and special information on this application. The answers I (we) have provided to the questions are complete and truthful.

I (we) request the Company to issue a policy of insurance relying on the answers provided with the understanding that any quoted premiums are subject to Company verification.

---

*Id.* (statement); Doc. 60-1 (signature).

The declarations page of the policy issued to Mr. Jensen (hereafter "Depositors Policy"),

effective May 7, 2014, to May 7, 2015, showed the following coverage and limits of liability:

**COVERAGE AND LIMITS OF LIABILITY (In Dollars)**
Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY | | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | | UNINSURED MOTORISTS (PER POLICY) BODILY INJURY | | PROPERTY DAMAGE | |
|---|---|---|---|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | EACH PERSON | OPTION | | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | |
| 1 | 100,000 | 300,000 | 100,000 | | | | 100,000 | 300,000 | 100,000 | |
| 2 | 100,000 | 300,000 | 100,000 | | | | | | 100,000 | |
| 3 | 100,000 | 300,000 | 100,000 | | | | | | 100,000 | |

| VEHICLE | DAMAGE TO YOUR VEHICLE | | | ROADSIDE ASSISTANCE | RENT RE TRN EXP | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Other Than Collision Loss | Collision Loss | | | | | | | | |
| | Actual Cash Value Minus Deductible | | | BY POLICY | PER DAY/ MAXIMUM | ACPEE COVRGE | | | | |
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |

Doc. 54-1 at 1.  The total premium was calculated as follows:

| V E H | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS BODILY INJURY | PROPERTY DAMAGE | DAMAGE TO YOUR VEHICLE | | ROADSIDE ASSISTANCE BY POLICY | RENT RE TRN EXP |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Other Than Collision Loss | Collision Loss | | |
| 1 | 130.92 | 65.30 | | | 131.30 | 12.98 | | | | |
| 2 | 148.46 | 84.54 | | | | 12.98 | | | | |
| 3 | 136.02 | 70.60 | | | | 12.98 | | | | |

| V E H | ACPEE COVRGE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |

**PREMIUMS (In Dollars)**

| V E H | Total Premium Each Vehicle | Other Miscellaneous Endorsements Requiring Premium: | | | |
|---|---|---|---|---|---|
| | | No. | | Sub-Total | $ 806.08 |
| 1 | 209.20 | | $ | Other Endorsements/Fees | $ |
| 2 | 245.98 | | $ | Full Term Premium | $ 806.08 |
| 3 | 219.60 | | $ | Add'l Premium | $ |
| | | | $ | Return Premium | $ |

Not a bill. Your bill is sent separately.
Page 1 of 2

EXHIBIT A

*Id.*  In other words, Mr. Jensen paid a separate premium for each vehicle for liability insurance for both bodily injury and property damage.  *See id.*  He also paid a separate premium ($12.98) for uninsured motorists property damage for each vehicle, but he paid a single premium ($131.30) for uninsured motorists bodily injury (hereafter "UMBI") coverage.  *Id.*  The UMBI coverage showed a "(PER POLICY)" limit of $100,000 per person, and $300,000 per accident. *Id.*  Each subsequent policy issued to Mr. Jensen showed the same limits on coverage, and similar calculations of the premium.  *See* Doc. 54-1 at 2−4.

The Depositors Policy also included endorsements AA1415 and AA1416.  *See* Doc. 56-2 at 2; *see also* Doc. 54 at 3, ¶¶ 3, 4; Doc. 54-3 (AA1415); Doc. 60-2 (AA1416).  Endorsement AA1415 is entitled "UNINSURED MOTORISTS COVERAGE — NEW MEXICO (NON-STACKED)."  Doc. 54-3 at 1.  Endorsement AA1416 is entitled "SPLIT UNINSURED MOTORISTS LIMITS — NEW MEXICO (NON-STACKED)."  Doc. 60-2 at 1.  For the purposes of this case, it appears that endorsement AA1416 is the relevant provision, as it states at

the beginning that "Paragraph A. of the Limit of Liability provision in the Uninsured Motorists Coverage (Non-Stacked) Endorsement [endorsement AA1415] is replaced by the following." *Id.* In other words, the relevant part of endorsement AA1415 is replaced by AA1416. Endorsement AA1416 provides as follows:

**LIMIT OF LIABILITY**

**A.** The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

* * * *

The maximum limit of liability is the most we will pay regardless of the number of:

* * * *

3. Vehicles shown in the Declarations; or . . . .

*Id*.

On September 3, 2016, Mr. Jensen was driving a motorcycle—not one of the vehicles listed in the Depositors policy—and was injured in a collision with motorist Silas Talkalai. Doc. 54 at 3, ¶ 7; Doc. 56 at 2, 3, ¶ 7. Mr. Jensen incurred more than $150,000 in medical expenses as a result of the collision. Doc. 54 at 3, ¶ 8; Doc. 56 at 3, ¶ 8. Mr. Jensen received $25,000 from Mr. Talkalai's insurance carrier, Safeway Insurance Company, which was the limit of Mr. Talkalai's coverage. Doc. 54 at 4, ¶ 9; Doc. 56 at 3−4, ¶ 9. Mr. Jensen also received $25,000 out of $50,000 in underinsured motorists benefits from the insurer of his motorcycle, Markel Insurance. Doc. 54 at 4, ¶ 10; Doc. 56 at 4, ¶ 10. On November 7, 2017, Depositors paid Mr. Jensen $75,000, which in its view represented the single UMBI limit it owed to Mr. Jensen: $100,000 less the statutorily required offset amount of $25,000 in liability limits paid by Safeway on behalf of Mr. Talkalai. Doc. 54 at 4, ¶ 11; Doc. 56 at 4, ¶ 11.

Although Mr. Jensen admits that Depositors paid him $75,000, he disagrees that this is the entire amount owed by Depositors.  Doc. 56 at 4, ¶ 11.  Mr. Jensen contends that he is entitled to reformation of the Depositors Policy to provide stacked UMBI coverage in the amount of $100,000 per person and $300,000 per accident on each of his three vehicles, for total stacked limits of $300,000 per person and $900,000 per accident.  Doc. 56 at 24.  To support his claim, he offers a few additional facts,[2] which Depositors does not dispute.  The insurance Application itself did not give Mr. Jensen any option to select or reject any type of stacked coverage.  *See* Doc. 56 at 5, ¶¶ 18, 21, 22; Doc. 56-1.  Depositors acknowledges that this is true: "Plaintiff accurately notes that he did not "select" or "reject" stacking—the Depositors Policy simply was not available with stackable coverages . . . ."  Doc. 60 at 7 n.3.  Mr. Jensen also contends that aspects of the Application and Declarations page were unclear as to whether Mr. Jensen was purchasing stacked coverage, but Depositors contests these assertions.  Doc. 57 at 2–4; Doc. 63 at 3–6.  Finally, Mr. Jensen contends that the bank teller who sold him the Depositors Policy—an apparent agent of Depositors—told him that she could obtain for him the same coverage he already had at a lower price.  Doc. 57-3 at 1–2.  Depositors says that this evidence is not admissible, but that even if it were, it did not create an ambiguity in the policy, and it did not change the clear terms of the policy application and the policy issued as a result of that application.  Doc. 63 at 12–13.  The Court will address these issues as necessary below.

---

[2] Depositors does dispute certain facts offered by Mr. Jensen, particularly whether the bank teller "promised" Mr. Jensen that she could obtain the same coverage that Mr. Jensen already had for less money, and whether Mr. Jensen had provided the teller with a copy of his policy so that she could provide a quote for exactly the same coverage.  *See* Doc. 63 at 3–6.  The Court will address these disputed factual issues later in the opinion.

II.   **Discussion**

**A. Legal Standard**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

### B. Depositors' Motion to Strike

Depositors has asked the Court to strike two documents attached to Mr. Jensen's response to Depositors' motion for summary judgment and to Mr. Jensen's own motion for summary judgment, arguing that the documents were not disclosed during the course of discovery and therefore are inadmissible. *See* Doc. 59. These documents—an affidavit by Mr. Jensen, Docs. 56-3 and 57-3, and a copy of a prior insurance policy (the "Hartford Policy"), Docs. 56-4 and 57-4—support allegations raised for the first time in Mr. Jensen's response to Depositors' motion for summary judgment.[3] I agree that the copy of the Hartford Policy is inadmissible. Mr. Jensen's affidavit, on the other hand, is admissible.

Depositors argues that in no relevant document—including Mr. Jensen's complaint, his section of the Joint Status Report, his amended initial disclosures, and his response to various

---

[3] Mr. Jensen alleges that he initiated his insurance policy with Depositors at the prompting of a Wells Fargo teller who "advised him that she could likely obtain the same coverage [as his previous policy] at a lower rate." Doc. 56-3 at 1, ¶ 4; *see also* Doc. 59 at 2. Because his previous policy with The Hartford allegedly included three stacked UMBI coverages, Mr. Jensen argues that "Depositors is . . . required to reform [his] policy in accordance with the promises made by its agent," and must therefore provide stacked UMBI coverage as part of the Depositors Policy. Doc. 56 at 21–22; Doc. 57 at 20–21.

interrogatories—does Mr. Jensen "identify any evidence of any alleged misrepresentation by any Wells Fargo employee, let alone any hint of a theory that [he] obtained his Depositors policy on the understanding that it would conform to the coverage afforded by [the Hartford Policy]." Doc. 59 at 6. "[Mr. Jensen's] failure to identify any such theory, or [supporting information], until responding to a dispositive motion after the close of discovery, is unquestionably untimely, and unfairly prejudicial to Depositors." *Id.*

Depositors cites FED. R. CIV. P. 37(c)(1), which reads:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Depositors argues that Mr. Jensen violated Rule 37(c)(1) by failing to disclose both "his *theory* regarding alleged misrepresentations in connection with his prior coverage" and the documents that Depositors moves to strike, and argues that this failure is not harmless because Depositors was unable to "explore the theory in discovery." Doc. 59 at 6 (emphasis added). Depositors, quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), recites four factors that should guide the Court's discretion when deciding whether untimely evidence should be stricken. Doc. 59 at 7. It argues that each factor weighs in favor of striking Mr. Jensen's affidavit and the Hartford Policy. *Id.* at 7–8. Because the basis for striking or not striking each item is obvious under Rule 37(c)(1), I do not consider these factors in deciding Depositors' motion.

I agree that the Hartford Policy is not admissible evidence and should be struck. Depositors' Request for Production 16 requested "[A]ny and all . . . documents that [Mr. Jensen] provided to, and that [he] received from, Wells Fargo Insurance Services when purchasing automobile insurance between 2012 and 2017." Doc. 69-2 at 8. Although Mr. Jensen

acknowledged in his response that he purchased his Depositors policy through Wells Fargo and "gave [the Wells Fargo agent] the information," he did not produce a copy of the Hartford Policy. *See id.* Elsewhere Mr. Jensen is more explicit:  "He provided a copy of his Hartford policy to the teller to enable her to match the coverages."  Doc. 56 at 10; Doc. 58 at 8.  The Hartford Policy—a document that Mr. Jensen says he provided to Wells Fargo Insurance Services in May 2014—is, without question, responsive to Depositors' RFP 16.  Therefore, Mr. Jensen's failure to produce the Hartford Policy during discovery precludes him from using it to support his position on the competing motions for summary judgment.[4]

However, Mr. Jensen was not required to disclose the legal theory underlying his misrepresentation claim, and his supporting affidavit is admissible evidence.  Depositors does not cite any precedent—nor is this Court aware of any precedent—that holds that a party must disclose its theories of the case during discovery.  Depositors does identify several interrogatories that could have elicited the information that Mr. Jensen attests to in his affidavit.  Doc. 59 at 4–6.  Among these interrogatories, Nos. 25 and 26 sought this information with specificity and potentially could justify preclusion of Mr. Jensen's affidavit.  But rather than answer these interrogatories, Mr. Jensen raised several objections to them, which Depositors did not challenge and therefore accepted.  Doc. 59-2 at 4–5; *see also* Doc. 65 at 7; D.N.M.LR-Civ. 26.6.  Depositors likewise chose not to depose Mr. Jensen.  Doc. 65 at 10.  Because Depositors failed to pursue the information presented in Mr. Jensen's affidavit during discovery, his

---

[4] Mr. Jensen argues that Depositors is not prejudiced by his failure to produce the Hartford Policy because "such policy should be part of Plaintiff's underwriting and application file" and "already in the possession of [Depositors]."  Doc. 65 at 6.  Depositors "categorically denies" that it was provided with the Hartford Policy and shows, by affidavit, that the Hartford Policy was not included in Mr. Jensen's underwriting or application files.  Doc. 69 at 2; Doc. 69-1.  I therefore reject this argument; Mr. Jensen should have produced the Hartford Policy in discovery, and his failure to do so is neither substantially justified nor harmless.

affidavit does not conflict with his discovery obligations and therefore is admissible.[5]

In his affidavit, Mr. Jensen attests to the details of his interaction with the Wells Fargo teller who assisted him with the purchase of the Depositors Policy. *See* Doc. 56-3. He also attests to his understanding of his coverage under the Hartford Policy and to the details of information he did or did not receive from Depositors after filling out his policy application. *Id.* In particular—and relevant to his misrepresentation claim—Mr. Jensen attests that when he filled out the application, he "had stacked UM/UIM coverage available on [his] three vehicles insured under a policy with Hartford insurance," and that the Wells Fargo teller "advised [him that] she could get [him] the same coverage for a lower premium." *Id.* at 2. However, the teller did not advise him "that by signing the application block that [he] would be giving up any [UM/UIM] coverages available to him," and did not "represent anything to [him] other than that [he] needed to sign the application in order to get coverage . . . represented [as] the same coverage for a lower premium cost." *Id.*

Mr. Jensen's complaint alleges misrepresentation at several points, though it contains no reference to the specific details found in the affidavit. *See* Doc. 1-1 ¶¶ 29 ("Defendant misrepresented the terms of the policy sold and provided . . . and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading"), 33 ("Defendant misrepresented to its insured, pertinent facts or policy provisions relating to coverages at issue"), 42 ("Defendant committed unfair trade practices . . . by representing that the insurance had benefits or qualities it did not have"), 43, 44. Depositors argues that the complaint "includes no

---

[5] Depositors also argues that Mr. Jensen's attested statements quoting the Wells Fargo teller are inadmissible hearsay under FED. R. EVID. 801(c) and 802. Doc. 60 at 11. Those statements are offered not for the truth of the matter asserted but as evidence of Mr. Jensen's expectations; the statements therefore are not hearsay.

allegation of any misrepresentation regarding prior coverage," but cites no authority holding that Mr. Jensen was required to state his misrepresentation claims with this degree of specificity. Doc. 59 at 3.  Likewise, Depositors argues that Mr. Jensen's First Amended Initial Disclosures "identified no witnesses employed by Wells Fargo," but does not elucidate why Mr. Jensen was obligated to identify a witness that he apparently had no intention of calling.  *Id.*; *see* FED. R. CIV. P. 26(a)(1) advisory committee's note to 2000 amendment ("A party is no longer obligated to disclose witnesses . . . that it does not intend to use.").

Depositors' Interrogatory No. 3 requested that Mr. Jensen identify "each and every person that [he] believes has . . . knowledge or information pertaining to any matter related to the subject matter of [his] Complaint . . . ."  Doc. 59-2 at 2.  Mr. Jensen did not identify Maria Dietz, the Wells Fargo teller who sold him his Depositors' policy.  *See id.*  The Court agrees that Mr. Jensen should have identified Ms. Dietz.  However, Mr. Jensen did identify Ms. Dietz in response to Depositor's Interrogatory 20, where Mr. Jensen states that Ms. Dietz "suggested the policy" to him, and that he provided information to Ms. Dietz in purchasing the policy.  *Id.* at 3. Thus, Mr. Jensen's failure to identify Ms. Dietz in response to Interrogatory No. 3 was harmless.

Depositors' Interrogatory Nos. 25 and 26 requested analogous sets of information: "all facts, witnesses . . . and exhibits you believe or contend support your allegations contained in" paragraphs 32 and 33 of Mr. Jensen's complaint.  *Id.* at 4.  These paragraphs allege, respectively, that Depositors violated its statutory duties under the New Mexico Unfair Claim Practices Act and that Depositors misrepresented to Mr. Jensen pertinent facts or policy provisions, in violation of New Mexico law.  Doc. 1-1 at 6, ¶¶ 32, 33.  Interrogatory No. 26 specifically seeks information regarding "the allegations that Depositors Insurance company made 'misrepresentations' when issuing an insurance policy to you."  Doc. 59-2 at 4.

There is little question that one or both interrogatories sought the information found in Mr. Jensen's affidavit.  However, Mr. Jensen objected to both interrogatories as contention interrogatories, overbroad, and unduly burdensome.  *Id.* at 4–5.  Depositors did not challenge these objections and therefore accepted them.  *See* D.N.M.LR-Civ. 26.6 ("A party served with objections to [an interrogatory] must [file a motion to compel] within twenty-one (21) days of service of an objection . . . .  Failure to proceed within this time period constitutes acceptance of the objection.").[6]  I therefore deny Depositor's Motion to Strike with respect to Mr. Jensen's affidavit and will consider the affidavit when evaluating the parties' motions for summary judgment.

### C.  The Parties' Cross-Motions for Summary Judgment

In its motion for summary judgment, Depositors argues that because Mr. Jensen was charged a single premium for UMBI coverage and signed a written acknowledgement of non-stacking of UM/UIM benefits that comports with the requirements of New Mexico law, Mr. Jensen "has no basis for any claim to amounts in excess of the single-vehicle limit of his Depositors policy."  Doc. 54 at 2.  In his response—and in his own motion for summary judgment—Mr. Jensen argues Depositors failed to follow New Mexico law and was required to offer Mr. Jensen various levels of stacked uninsured/underinsured motorists ("UM/UIM") coverage.  Mr. Jensen further argues that because Depositors failed to obtain a valid waiver of stacked UM/UIM coverage from Mr. Jensen, the policy must be reformed to provide stacked limits of coverage.  Doc. 56 at 7−24; Doc. 57 at 5–22.  Finally, Mr. Jensen contends that the

---

[6] Depositors argues that "[a] responding party cannot simply lodge meritless objections, and thrust the burden on the requesting party to 'challenge' them, or forgo receiving information to which it is entitled."  Doc. 69 at 7.  But the time for Depositors to lodge arguments concerning the merits of Mr. Jensen's objections is long past.  Final discovery motions in this case were due May 18, 2018, *see* Doc. 49, and Depositors never filed a motion to compel responses to these interrogatories.

policy is ambiguous regarding stacking and should be reformed to comport with the representations of the Wells Fargo employee who sold him the policy.  Doc. 56 at 21–22; Doc. 57 at 20–21.  Because I find that the Depositors Policy unambiguously disclaimed the stacking of UMBI coverage in keeping with New Mexico law, I grant Depositors' motion and deny Mr. Jensen's.[7]

### 1.  New Mexico insurers are not required to offer stacked UMBI coverage.

In 2018, I stayed this case and certified to the New Mexico Supreme Court the question of whether an automobile liability insurer is required to offer stacked UM/UIM coverage in all multi-vehicle New Mexico automobile insurance policies.  Doc. 79.  Following its opinion in *Ullman v. Safeway Ins. Co.*, 2023-NMSC-030, 539 P.3d 668, the New Mexico Supreme Court ruled that the certified question was moot.  Doc. 81.  *Ullman* held (1) that "offers of UM/UIM coverage going forward must include a brief discussion of stacking" and (2) that the addition of a further vehicle to an existing insurance policy does not require an insurer to obtain a new rejection of UM/UIM coverage levels.  *Id.* ¶¶ 43, 56, 539 P.3d at 682, 685.

Neither holding squarely addresses the certified question.[8]  However, the *Ullman* court states that "[i]ntrapolicy stacking is . . . now a common industry practice favored (*although not*

---

[7] Although the parties have each filed a motion for summary judgment, Mr. Jensen's motion closely tracks his response to Depositors' motion.  *Compare* Doc. 56 *with* Doc. 57.  Because I conclude the arguments made in both places are insufficient to raise a genuine issue of material fact, and because the decision on Depositors' motion for summary judgment is dispositive, I do not consider Mr. Jensen's motion separately.

[8] Per my order, Doc. 82, the parties filed supplemental briefing concerning the effect of *Ullman* on the disposition of this case.  Depositors asserts that *Ullman* affirms the caselaw cited in its motion and "unequivocally answered . . . the question certified to the New Mexico Supreme Court."  Doc. 84 at 3.  In contrast, Mr. Jensen asserts that the *Ullman* court "completely ignored the certified question," and he filed a Motion for Reconsideration with the New Mexico Supreme Court.  Doc. 83.  On May 13, 2024, the New Mexico Supreme Court denied the motion for reconsideration.  *See Jensen v. Depositors Ins. Co.*, S-1-SC-37464.  I therefore must apply the reasoning in *Ullman* and prior New Mexico cases to decide this case.

*mandated*) in New Mexico. *Id.* ¶ 29, 539 P.3d at 677 (emphasis added).  Later, while discussing *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 92 P.3d 1255, the leading case on UMBI stacking, the court states that it "declined to declare all antistacking language void as against public policy or to make stacking mandatory in every case, concluding that such a requirement might price some potential insureds out of the UM/UIM market." *Id.* ¶ 32, 539 P.3d at 678 (citing *Montano*, 2004-NMSC-020, ¶¶ 15–16, 92 P.3d at 685–86).  These statements confirm that, under *Montano*, insurers are not required to offer stacked UMBI coverage.  Seeing no indication to the contrary elsewhere in *Ullmann* or other caselaw, I proceed with the understanding that insurers in New Mexico are not required to offer stacked UMBI coverage.[9]

### 2.  Judicial expansion of stacking in the New Mexico courts

There is a long history of litigation in the New Mexico courts over stacking of UM/UIM coverage.  At the outset, it is worth clarifying a fact so basic that I could not find it clearly stated in any New Mexico caselaw:  when referring to *stacked* UM/UIM coverage, the only coverage at issue is *bodily injury* coverage.  The reason for this is fundamental:  bodily injury coverage follows the insured and compensates the insured for injuries caused by a vehicle driven by an un(der)insured motorist.  *See, e.g., Lopez v. Found. Reserve Ins. Co., Inc.*, 1982-NMSC-034, ¶ 12, 646 P.2d 1230, 1234 ("[U]ninsured motorist coverage protects against bodily injury and does not relate to coverage of a particular vehicle.").  Thus, an insured that pays UMBI premiums for multiple vehicles will only get his or her money's worth if each premium increases

---

[9] Depositors also cites a statement from the New Mexico Court of Appeals' opinion in *Ullman*: "an insurer has no duty to offer . . . stacking to a customer . . . ." *Ullman v. Safeway Insurance Company*, 2017-NMCA-071, ¶ 15, 404 P.3d 434, 440. This statement is more definitive than anything found in the New Mexico Supreme Court's *Ullman* decision and is not undermined by anything in that decision.  This further supports my conclusion that insurers are not required to offer stacked UMBI coverage.

the effective limits of their coverage by "stacking" further coverage atop their underlying limit. *See id.* ¶ 18, 646 P.2d at 1235 ("[I]t is only fair that the insured be permitted to stack the coverages for which he has paid.").  The same is not true of UM/UIM *property damage* coverage, which only provides coverage for incidents that involve the covered vehicle.

Under New Mexico caselaw, an insurer may be liable for stacked UMBI coverage despite contractual language to the contrary because the insured: (1) was charged multiple premiums for UMBI coverages on multiple vehicles or could reasonably believe that they were charged multiple premiums, *see Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶¶ 12–16, 879 P.2d 759, 762–63, or (2) was charged only a single premium for UMBI coverage on multiple vehicles, but could have a reasonable expectation of stacked coverage because of an ambiguity in the anti-stacking provision of the insurance policy at issue, *see generally Montano*, 2004-NMSC-020, 92 P.3d 1255.  Because "anti-stacking clauses are almost inherently ambiguous," an insurer will be liable for stacked UMBI coverage unless it "obtain[s] written rejections of stacking."  *Id.* ¶¶ 21, 28, 92 P.3d at 1261, 1263.  As discussed in more detail below, a commonsense reading of *Montano* implies that where an insurer does not *offer* stacked coverage, it must instead obtain a written "plain and affirmative declaration that the amount charged represents a single premium for a single amount of coverage."  *Id.* ¶ 27, 92 P.3d at 1262.  In short, an insurer is not liable for stacked UMBI coverage if it (1) charges a single premium for UMBI coverage, regardless of the number of covered vehicles *and* (2) obtains a written, signed declaration to this effect—or written rejections for each coverage beyond the first—from the insured.

> **3.  The Depositors Policy disclaims stacked UMBI coverage in compliance with both *Montano* requirements.**

Despite covering three vehicles, the Depositors Policy charges only one premium for UMBI coverage.  *See* Doc 56-2 at 1.  Mr. Jensen signed and dated a "Non-Stacking of Uninsured

Motorists Coverage Acknowledgement," which stated that because he was charged a single premium for Uninsured Motorists Coverage, "stacking of [UMBI] Coverage [was] not available," "regardless of the number of vehicles listed on [the] policy." *Id.* at 4.  Moreover, this acknowledgement was consistent with Endorsement AA1416, mailed to Mr. Jensen as part of the Depositors Policy, entitled "SPLIT UNINSURED MOTORISTS LIMITS — NEW MEXICO (NON-STACKED)," which stated that the single limit of liability shown in Mr. Jensen's policy declarations from UMBI was the "maximum limit of liability for all damages . . . arising out of "bodily injury" sustained by any one person in any one accident . . . regardless of the number of . . . [v]ehicles shown in the Declarations . . . ."[10]  Doc. 60-2.  I therefore find as an initial matter that Depositors has shown that there is no genuine issue as to any material fact with regard to the policy and the limits of its coverage.

**4. Depositors was not obligated to provide information for or obtain rejections of coverage it did not offer.**

Mr. Jensen argues that *Montano* imposes requirements to disclaim stacked UMBI coverage that the Depositors Policy does not satisfy.  Specifically, Mr. Jensen argues that *Montano* requires that "an insurer obtain a 'written rejection of each stacked coverage,' and in so doing . . . 'declare the premium charge for each' UM/UIM coverage available and allow the insured to reject, in writing, some or all of the offered coverages."  Doc. 56 at 9; Doc. 57 at 7 (citing *Montano*, 2004-NMSC-020, ¶¶ 19–20, 92 P.3d at 1260–61).  Because the application he filled out on May 7, 2014, did not declare the premium charged for additional, stacked UMBI coverages, nor provide an opportunity to affirmatively reject such coverages, Mr. Jensen contends that it did not "comply with the rules for offering and rejecting stacked coverage . . . ."

---

[10] Although Depositors references Endorsement AA1415 in its Undisputed Material Facts, *see* Doc. 54 at 3, ¶¶ 3, 4, Endorsement AA1416 replaces the relevant paragraph of the former endorsement, *see* Doc. 60-2, and was part of Mr. Jensen's policy, *see* Doc. 56-2 at 2.

Doc. 56 at 11; *see also* Doc. 57 at 8.  Depositors argues that Mr. Jensen relies on dicta that concerns "the process for selecting or rejecting UM/UIM coverage, not the process for disclaiming *stacking*."  Doc. 63 at 9.  Depositors further argues that *Montano* holds that to disclaim stacking, an insurer must only "undertake[] the burden of obtaining a separate, comprehensible, and written disclaimer of stacking."  *Id.*

I agree with the general thrust of Depositors' argument:  because *Montano* does not *require* insurers to offer stacking, it does not require a premium-by-premium breakdown and rejection in every instance.  The *Montano* court was "not willing to expand" the public policy in favor of stacking "to require stacking in all cases," but was convinced that its "traditional case-by-case ambiguity analysis [of insurance contracts] ha[d] proved unworkable."  2004-NMSC-020, ¶¶ 9, 17, 92 P.3d at 1258, 1260.  The court therefore sought "a solution to the seemingly inherent ambiguities in anti-stacking clauses," and concluded that "an insurance company should obtain *written rejections* of stacking," *id.* ¶ 19, 92 P.3d at 1260 (emphasis added), rather than the "plain and affirmative declaration" of non-stacking that was previously required, *id.* ¶ 1, 92 P.3d at 1256.  In the instance that an insurance company *offers* "extra [UMBI] coverage" through stacking—up to the statutory maximum of one coverage per vehicle—*Montano* holds that the insurer must obtain written confirmation for each level of stacked coverage the insured rejects.  *See id.* ¶¶ 18, 20, 92 P.3d at 1260–61.

*Montano* does not squarely address the circumstance presented in this case, where an insurer has offered *only* non-stacked UMBI coverage. [11]  Since a "rejection" is not appropriate

---

[11] Though the language quoted by Depositors as the process to disclaim, rather than reject, stacking—"undertak[ing] the burden of obtaining a separate, comprehensible, and written disclaimer of stacking"—supports the contention that Depositors has adequately disclaimed stacked coverage, that language is not part of *Montano*'s holding.  *See Montano*, 2004-NMSC-020, ¶ 18, 92 P.3d at 1260; Doc. 60 at 8.  Rather, it is part of a passage, quoted with approval,

when there is no additional coverage to reject, I read *Montano* to modify the requirement

previously imposed on insurers by *Rodriguez*, 1994-NMSC-075, 879 P.2d 759; that is, to

unambiguously disclaim stacking of UMBI coverage, an insurer must obtain a *written* "plain and

affirmative declaration that the amount charged represents a single premium for a single amount

of coverage." *Montano*, 2004-NMSC-020, ¶ 1, 92 P.3d at 1256 (*Montano* "modif[ies]"

requirements set out in *Rodriguez*).  Depositors did not offer extra UMBI coverage; it simply

offered non-stacked UMBI coverage at Mr. Jensen's liability limits.  *See* Doc. 60 at 7 n.3 ("[T]he

Depositors Policy simply was not available with stackable coverages . . . .").  Mr. Jensen signed

the declaration of non-stacking as part of his policy application, satisfying the requirements first

articulated in *Rodriguez* and modified by *Montano*.  *See* Doc. 54-2.  This is sufficient to ensure

that Mr. Jensen knew "exactly what coverage [he was] receiving and at what cost."  *Montano*,

2004-NMSC-020, ¶ 21, 92 P.3d at 1261.  The fact that Depositors did not obtain written

rejections—or provide listed premiums—for coverages that it never offered does not create a

genuine issue of material fact.

### 5. The requirements for the rejection of maximum UM/UIM coverage are not relevant to this case.

Mr. Jensen next argues that Depositors failed to obtain valid rejections of UMBI

coverage on two of his three vehicles and did not fulfill the requirements for rejection of

UM/UIM coverage.  Doc. 57 at 12–20; Doc. 56 at 12–24.  This argument expands on Mr.

Jensen's earlier claim that under *Montano*, "Depositors was required to offer [UMBI] coverage

on each vehicle."  Doc. 56 at 10; Doc. 57 at 8.  While I agree that Depositors was required to

offer UM/UIM coverage, including UMBI coverage, up to liability limits, and UM/UIM property

---

from a special concurrence written by the Chief Justice of the Supreme Court of Mississippi.  *See*
*U.S. Fid. and Guar. Co. v. Ferguson*, 698 So. 2d 77, 82 (Miss. 1997).

damage on each vehicle, *see* N.M. Stat. § 66-5-301(A), (B), a requirement that insurers offer UMBI coverage on *each* vehicle would amount to a requirement that insurers offer fully stacked UMBI coverage. *Cf. Lopez*, 1982-NMSC-034, ¶ 15, 646 P.2d at 1234 ("[New Mexico law] does not require separate full uninsured motorist coverage for each vehicle insured under a single policy."). I already have concluded that *Montano* does not require this.

Mr. Jensen looks beyond *Montano*, discussing at length *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 245 P.3d 1214. *Jordan*, which sets out the requirements for an unambiguous rejection of UM/UIM coverage at an insured's liability limit, is inapposite here. Mr. Jensen is entitled to—and received—UMBI coverage at his liability limit of $100,000 per person/$300,000 per accident. New Mexico law requires that Depositors offer UM/UIM coverage up to an insured's liability limits on all policies, and *Jordan* sets stringent requirements to ensure that insureds receive that level of coverage unless they knowingly and intelligently reject it. *See id.* ¶ 22, 245 P.3d at 1222. To my knowledge, no New Mexico statute requires that insurers offer stacked UMBI coverage, and *Montano*, not *Jordan*, sets the requirements for rejecting an offer of stacked UMBI coverage. Because Mr. Jensen received UMBI coverage at his liability limit, the requirements set forth in *Jordan* do not apply in this case and create no genuine issue of material fact.

### 6. The representations of the Wells Fargo teller do not render the Depositors Policy ambiguous and do not justify reform of the policy.

Finally, Mr. Jensen argues that Depositors must reform his policy to provide the same coverage as the Hartford Policy—i.e., stacked UMBI coverage—in keeping with the representation made by the bank teller who assisted Mr. Jensen with his application. Doc. 56 at 21–22; Doc. 57 at 20–21. This argument dovetails with his earlier claim that the Depositors Policy is textually ambiguous because it lists six UM/UIM coverages and four UM/UIM

premiums, despite the written declaration that a single premium has been charged for UM/UIM coverage. *See* Doc. 56 at 11–12; Doc. 57 at 10–12. Even considering this argument and the extrinsic evidence offered in Mr. Jensen's affidavit, I find as a matter of law that the Depositors Policy unambiguously excluded stacked UMBI coverage. Therefore, there is no basis to reform the policy and no genuine issue of material fact.

Under New Mexico law, insurance contracts are to be construed in the same manner as other contracts. *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 18, 945 P.2d 970, 976. "A court must look to the language of the policy to try to ascertain the purpose, meaning, and intent of the contracting parties," *Bonham v. Indem. Ins. Co. of N.A.*, 507 F. Supp. 2d 1196, 1209 (D.N.M. 2007) (citing *Ponder*, 2000–NMSC–033, ¶ 11, 12 P.3d 960, 965), and "should ask what a reasonably intelligent, non-lawyer lay person might understand the policy to mean, in light of the usual and natural meaning of words and the circumstances prior to and in making the policy," *id.* (citing *Rummel*, 1997–NMSC–041, ¶ 19, 945 P.2d at 976).

> The court's construction of an insurance policy is guided by the reasonable expectations of the insured where the policy is found to be unclear and ambiguous. Thus, the insured's expectations only come into play to resolve ambiguities once *the court* determines, based on the contract language together with any extrinsic evidence offered by the parties, that the contract is ambiguous.

*Id.* at 1213–14 (internal quotation marks and citations omitted) (emphasis in original); *see also Rodriguez*, 1994-NMSC-075, ¶ 12, 879 P.2d at 763. ("Giving effect to the insured's reasonable expectations, *in cases of policy ambiguity*, is of course a well-settled approach to construing and applying language in insurance policies.") (citation omitted) (emphasis added).

"[T]he question of whether a contractual term [is ambiguous] is one of law, . . . [I]f the court finds ambiguity, the jury . . . resolves the ambiguity as an issue of ultimate fact." *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 17, 817 P.2d 238, 243–44. The Court may consider extrinsic evidence to determine whether a provision is ambiguous. *Ponder*, 2000–

NMSC–033, ¶ 13, 12 P.3d at 965.  However, "in examining extrinsic evidence [the Court] will not give effect to a party's undisclosed intentions," *id.* ¶ 14, 12 P.3d at 965, and "[j]udgment as a matter of law against an insured is appropriate . . . when the insured's expectations conflict with the clear language of the policy itself," *Bonham*, 507 F. Supp. 2d at 1214.

I find no ambiguity in the text of the Depositors Policy and correspondingly find that any expectation of stacked UMBI coverage conflicts with the clear language of the policy.  It is true that the Depositors Policy charges four total premiums for UM/UIM coverages; however, if the *total* number of premiums were the relevant criterion, no policy could ever afford both UMBI and UM/UIM property damage coverage and still charge "a single premium for a single coverage."  *Montano*, 2004-NMSC-020, ¶ 1, 92 P.3d at 1256.  Although the signed declaration may be ambiguous regarding Mr. Jensen's UM/UIM property damage coverage, "as to [UMBI] coverage, the [declaration] is accurate and clearly states that stacking will not be allowed.  For purposes of this case, which does not involve UM/UIM property-damage coverage, the ambiguity is irrelevant."  *Fernandez v. Safeco Ins. Co. of Am.*, No. CIV 10-860 BB/RHS, 2011 WL 13113785, at *4 (D.N.M. Nov. 21, 2011).

Likewise, the Wells Fargo teller's representation that she could obtain the same coverage at a lower premium does not create an extrinsic ambiguity in the policy.  Mr. Jensen's affidavit reveals no specific assurances about the nature of his new policy.  To the extent that the promise of "the same coverage" created specific expectations in Mr. Jensen's mind, those expectations should have been dispelled as he examined the terms of the Depositors Policy.  Doc. 56-3 at 1–2; *see Porter v. Butte Farmers Mut. Ins. Co.*, 1961-NMSC-028, ¶ 16, 360 P.2d 372, 375 ("It is the duty of the [insured] to read and know the contents of the policy before he accepts it . . . ."); *Berlangieri v. Running Elk Corp.*, 2020-NMCA-046, ¶ 25, 44 P.3d 538, 544 (Insureds were

bound by "unmistakable exclusion set out in reasonably sized print.").  The Hartford Policy and Depositors Policy differ not only in their provision of stacked UMBI coverage, but quite plainly in their liability limits:  the Hartford Policy provided $250,000/$500,000/$10,000 liability and UM/UIM coverage, while the Depositors Policy provided $100,000/$300,000/$100,000 coverages.  *See* Docs. 56-4; 56-1 at 1.

If Mr. Jensen retained the expectation that his new policy would provide the same coverage as the Hartford Policy, he kept this expectation "undisclosed" and sought no further assurances to this effect either at the time of his application or when renewing his policy.  *Cf. Ponder*, 2000-NMSC-033, ¶¶ 12–19, 12 P.3d at 965–66 (finding a policy ambiguous despite unambiguous language because of repeated assurances of coverage over multiple interactions); *see also Porter*, 1961-NMSC-028, ¶ 16, 360 P.2d at 375 ("[A]n applicant for insurance who receives a policy which does not conform to the agent's representations, must notify the insurer within a reasonable time of refusal to accept the policy, and retention of the policy without objection is regarded as an acceptance thereof.").  These extrinsic circumstances do not create an ambiguity in the unambiguous language of the Depositors Policy.  Mr. Jensen's final argument and corresponding affidavit do not create a genuine issue of material fact.  I therefore grant Depositors' motion for summary judgment.

## III.    <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS Depositors' Motion for Summary Judgment (Doc. 54) and DENIES Mr. Jensen's Memorandum Motion for Summary Judgment (Doc. 57).  Further, the Court GRANTS in part and DENIES in part Depositors' Motion to Strike (Doc. 59).

**IT IS SO ORDERED.**

_____

Laura Fashing
United States Magistrate Judge